1

2

3

4

5                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
6

7  DONALD R. HUNT,                    No.  4:16-CV-5125-EFS

8                     Plaintiff,

                                      **ORDER GRANTING DEFENDANTS' MOTION**
9          v.                         **FOR SUMMARY JUDGMENT AND DENYING**
                                      **IN PART AND GRANTING IN PART**
10  ISRAEL R. GONZALEZ; JEFFERY       **PLAINTIFF'S MOTION FOR SUMMARY**
   UTTECHT; DAVID BAILEY; LAURA       **JUDGMENT**
11  SHERBO; JACQUELINE L. FLUAITT;
   LORI WONDERS; CHE; MICHAEL ZWICKY;
12  AND 1 TO 20 UNKNOWN JOHN OR JANE
   DOES,
13
                      Defendants.
14

15       Before the Court, without oral argument, are Defendants' Motion

16  for Summary Judgment, ECF No. 26, and Plaintiff's Cross-Motion for

17  Summary Judgment, ECF No. 41. Having reviewed the pleadings and the

18  file in this matter, the Court is fully informed. The Court grants

19  Defendants' Motion for Summary Judgment. Plaintiff's Cross-Motion for

20  Summary Judgment is denied to the extent Plaintiff requests that

21  summary judgment be granted in his favor and granted as to Plaintiff's

22  request that his Sixth Amendment claims be dismissed.

23  ///

24  ///

25  //

26  /


ORDER - 1

I.   **FACTS**[1]

Plaintiff was transferred to Coyote Ridge Corrections Center (CRCC) on July 18, 2013. On July 25, 2013, Plaintiff submitted grievance number 13542140 regarding general population access to the law library. Defendant Fluaitt was acting as grievance coordinator at that time. On July 26, 2013, Plaintiff submitted a request for priority access to the law library based on a pending deadline in Washington Supreme Court Cause No. 88842-6. This request was denied because Defendant Wonders determined there was not an immediate deadline in that case. On July 29, 2013, Plaintiff filed a request for priority access to the law library in Washington Court of Appeals Cause No. 69541-0-I. This request was denied because Defendant Wonder determined that the deadline, which was for paying a filing fee, did not meet the standards for priority access.

Plaintiff's grievance was denied and returned to him on July 31, 2013. On August 1, 2013, Plaintiff appealed the grievance to level 2. On August 7, 2013, Plaintiff filed another grievance indicating a desire to appeal the denial of grievance number 13542140 to the next level. On August 9, 2013, Plaintiff submitted grievance number 13542782 regarding access to the law library. On August 12, 2013,

---

[1] In connection with their motions, each party submitted a statement of facts. *See* ECF Nos. 27 & 41 at 2-4. Any disputed facts or quotations are supported by a citation to the record. When considering this motion and creating this factual section, the Court (1) believed the undisputed facts and the non-moving party's evidence, (2) drew all justifiable inferences therefrom in the non-moving party's favor, (3) did not weigh the evidence or assess credibility, and (4) did not accept assertions made by the non-moving party that were flatly contradicted by the record. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff filed an initial grievance related to access to the law library. On August 13, 2013, Defendant Fluaitt determined that grievance number 13542782 were related to grievance number 1354210 and combined the grievances under number 1354210. On August 14, 2013, Defendant Fluaitt advised Plaintiff that his August 12, 2013 grievance was on the same topic as his other grievances and would therefore be added to that file. On August 15, 2013, Plaintiff filed another grievance related to access to the law library. On August 19, 2013, Plaintiff filed an additional grievance regarding access to the library. On August 22, 2013, Defendant Fluaitt sent a letter to Plaintiff advising him that he may be issued an infraction if he continued to file numerous grievances on the same topic.

On August 6, 2013, Plaintiff again submitted a request for priority access in his Washington Supreme Court case, and this request was approved based on an impending deadline in that case. On September 3, 2013, Plaintiff submitted an additional request for priority access related to the Washington Supreme Court case, and that request was again approved. On October 8, 2013, Plaintiff submitted another request for priority access, and it was approved.

In June 2012, the Washington Department of Corrections (DOC) and the Washington State Library entered into a contract, under which the Washington State Library was to provide law library services to CRCC. Under the terms of the contract, if Washington State Library staff were not available, CRCC employees were not permitted to open the library and the library remained closed. There were staffing difficulties at the CRCC law library from July 2013 through spring

2014, which resulted in the law library being closed repeatedly. One month during this period the law library was open for only 12 days and another month the law library was open for a total of only 61 hours. In April 2014, the contract was amended to transfer the provision of law library services to the DOC.

In 2013, DOC began the transition to providing legal resources to inmates via an electronic database, rather than through paper books. Westlaw provided the electronic database for CRCC from January 1, 2013, through December 31, 2015. LexisNexis was contracted to provide electronic database services from December 31, 2015, through December 31, 2017. On July 12, 2013, Defendant Gonzalez directed prison officials to dispose of old law books as a result of the transition to the electronic database. ECF No. 28-7.

One particular resource, the Washington Practice Series, is published by West Publishing. Hard copies of this resource were available in the CRCC law library prior to the transition to electronic resources. When Westlaw was providing the electronic database services, the Washington Practice Series was available in the electronic database. When LexisNexis became the service provider, this resource was no longer provided in the electronic database.

On March 12, 2016, Plaintiff filed complaint number 16606206 regarding the fact that the Washington Practice Series books were outdated. On March 16, 2016, Plaintiff filed a corresponding level 1 grievance. On March 24, 2016, Defendant Fluaitt responded that the Washington Practice Series books should be available on LexisNexis and that LexisNexis had been contacted to correct the issue. On March 27,

2016, Plaintiff appealed the grievance to level 2. On April 11, 2016, Defendant Zwicky responded that the law libraries are going electronic and updates will be made electronically. On April 17, 2016, Plaintiff appealed the grievance to level 3. At level 3, the grievance number was changed to 16608781. On May 23, 2016, DOC responded that it was working with LexisNexis to resolve the issue.

On May 18, 2016, Plaintiff filed complaint number 16610598 alleging that prison officials had retaliated against him for filing grievances regarding the out-of-date Washington Practice Series by removing the books from the library. On May 24, 2016, Plaintiff submitted a rewrite of this complaint. A prison official responded that the LexisNexis electronic database had replaced the Washington Practice Series. On May 28, 2016, Plaintiff filed a corresponding level 1 grievance. A prison official responded that LexisNexis had replaced the reference books and that the references books would be removed from CRCC. Plaintiff appealed the grievance to level 2 on June 9, 2016. On June 14, 2016, a prison official responded that Plaintiff's grievance had already been addressed through grievance number 16608781.

On June 2, 2014, CRCC instituted a policy regarding carbon paper that restricted the use of carbon paper to the law library and made carbon paper contraband when possessed outside of the law library. The DOC has a policy against accepting compact discs (CDs) through the mail, including CDs containing legal material. The DOC has a policy against inmates receiving non-religious calendars through the mail.

/

1

**II.  SUMMARY JUDGMENT STANDARD**

2      Summary judgment is appropriate if the record establishes "no

3 genuine dispute as to any material fact and the movant is entitled to

4 judgment as a matter of law." Fed. R. Civ. P. 56(a). The party

5 opposing summary judgment must point to specific facts establishing a

6 genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*,

7 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*

8 *Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party fails to

9 make such a showing for any of the elements essential to its case for

10 which it bears the burden of proof, such that the moving party is

11 entitled to judgment as a matter of law, the trial court should grant

12 the summary judgment motion. *Celotex Corp.*, 477 U.S. at 322.

13

**III.  DISCUSSION**

14      Based on the above facts, Plaintiff brought various claims

15 against Defendants. Both Plaintiff and Defendants have now filed

16 motions for summary judgment. The Court will address, in turn, each of

17 Plaintiff's claims.

18 **A.  Sixth Amendment Claims**

19      As an initial matter, Plaintiff has indicated that he would like

20 to dismiss his claims under the Sixth Amendment. *See* ECF No. 41 at 1.

21 The Court construes this request as a motion to dismiss under Federal

22 Rule of Civil Procedure 41. The Court finds that the Sixth Amendment

23 is not relevant to the claims raised by Plaintiff in this lawsuit.

24 Accordingly, the Court grants Plaintiff's motion to dismiss. Given the

25 fact that this case has already advanced to the summary-judgment

26 stage, however, the Court finds that dismissal with prejudice as to

1  the Sixth Amendment claims is appropriate to avoid prejudice to

2  Defendants. Accordingly, Plaintiff's Sixth Amendment claims are

3  dismissed with prejudice. Fed. R. Civ. P. 41(a)(2).

4  **B.   Calendars, Carbon Paper, and CDs**

5      The Court next addresses Plaintiff's claims related to the use

6  and possession of calendars, carbon paper, and CDs within the CRCC

7  facility. Plaintiff has alleged that restrictions on the use of carbon

8  paper and the inability to obtain CDs through the mail constitute a

9  violation of his rights under the First and Fourteenth Amendments by

10 denying him meaningful access to the courts. *See, e.g.*, ECF No. 1-4 at

11 21–22; ECF No. 41 at 4. Plaintiff alleges that his inability to obtain

12 calendars through the mail interferes with his First Amendment rights

13 of association and free speech. *See, e.g.*, ECF No. 41 at 4. Defendants

14 respond that, due to institutional safety concerns, these restrictions

15 are necessary and do not substantially interfere with Plaintiff's

16 constitutional rights. *See, e.g.*, ECF No. 26 at 12 (carbon paper and

17 CDs); ECF No. 56 at 9 (calendars). The Court finds that there are no

18 questions of material fact related to these claims, and they are

19 therefore appropriate for resolution by summary judgment.

20     Generally, prison administrators must be given "wide-ranging

21 deference in the adoption and execution of policies and practices that

22 in their judgment are needed to preserve internal order and discipline

23 and to maintain institutional security." *Bell v. Wolfish*, 441 U.S.

24 520, 547 (1979). Nevertheless, "[p]rison walls do not form a barrier

25 separating prison inmates from the protections of the Constitution."

26 *Turner v. Safley*, 482 U.S. 78, 84 (1987). Accordingly, in order to

determine whether a particular prison policy is permissible — even if it infringes to a degree on the constitutional rights of inmates — courts apply a four-factor test: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the absence or availability of ready alternatives. *Id.* at 89–90.

    1.  <u>Carbon Paper</u>

    CRCC declared carbon paper to be contraband on June 2, 2014, and directed that carbon paper use be limited to the law library. ECF No. 28-2. Plaintiff claims that this policy "is meant to hinder, restrict, deter or deny meaningful access to the courts." ECF No. 1-4 at 21. Defendants respond that the policy was both a reaction to the fact that inmates were using the carbon paper to make tattoos and due to the penological interest in reducing copies of legal pleadings because inmates use pleadings as currency. ECF No. 26 at 12; ECF No. 28 at 2-3. Plaintiff argues that there is "no penological interest" served by the restriction on carbon paper. ECF No. 41 at 22. Plaintiff notes that he has never witnessed anyone using carbon paper for tattoos, many other permitted items are used for tattooing, and the restriction acts primarily as a deterrent to litigation because of the increase in copying expenses. ECF No. 41 at 22-23.

1    The Court finds that, despite the burden the carbon paper

2   restriction may impose on Plaintiff's ability to efficiently produce

3   and file court documents, the restriction is permissible. While the

4   restriction might make it less convenient for Plaintiff to make

5   copies, the Court finds that the restriction does not interfere with

6   Plaintiff's access to the courts because Plaintiff can make copies in

7   other ways, including by handwriting, and he has access to carbon

8   paper to make copies while in the law library. *Phillips v. Hust*, 588

9   F.3d 652, 656 (9th Cir. 2009) ("We thus had no trouble also concluding

10  that inmates had no right to a typewriter to prepare their legal

11  documents where the court rules permitted pro se litigants to hand-

12  write their pleadings." (referencing *Lindquist v. Idaho State Bd. of

13  Corrs.*, 776 F.2d 851, 856 (9th Cir. 1985))). Regardless, even if the

14  Court found that the restriction impinged on Plaintiff's

15  constitutional rights, the Court would uphold the restriction under

16  the *Turner* test, as outlined below.

17    Applying the *Turner* test, the prison has a legitimate interest

18  in preventing the use of carbon paper for tattoos and preventing the

19  production of copies of legal documents for use as currency. The

20  restriction imposed — limiting carbon paper use to the law library —

21  is rationally related to these goals. There are also alternatives open

22  to inmates, such as using the carbon paper while in the law library or

23  paying for copies to be made. While potentially time-consuming,

24  inmates could also handwrite copies of their filings. As to the third

25  factor, accommodating Plaintiff's request to have access to carbon

26  paper outside of the law library would effectively negate the

1  restriction and create the risk of carbon paper being used for

2  tattooing or to create copies of pleadings that could then be used as

3  currency. There are no real alternatives to the carbon paper

4  restriction. The prison considered the use of carbonless forms to

5  create duplicates, which would have resolved the tattooing issue, but

6  officials ultimately appear to have rejected this alternative because

7  it would not have addressed the issue of pleading copies being used as

8  currency. *See* 42-5, Ex. 403–408. Thus, the restriction on carbon paper

9  is permissible. Defendants are entitled to judgment as a matter of

10  law, and the Court therefore grants summary judgment in favor of

11  Defendants on this claim.

12      2.  <u>CDs</u>

13      Plaintiff argues that the restriction on inmate receipt of legal

14  CDs, including CDs from attorneys and CDs including discovery,

15  interferes with his right of access to the courts. ECF No. 1-4 at 21–

16  22. Defendants respond that the CD restriction "does not create a

17  legitimate interference with [Plaintiff's] ability to litigate" and

18  the DOC has "legitimate security concerns" regarding CDs from non-

19  approved vendors because reviewing CDs would require significant staff

20  resources, and the CDs could include viruses that would impair the

21  operations of the prison. ECF No. 26 at 12. In addition, Defendants

22  note that labels and other identifying information on CDs could be

23  replicated, making it difficult to know with certainty the source of

24  any CD. ECF No. 26 at 12.

25      Again, the Court finds that this restriction does not

26  significantly interfere with Plaintiff's access to the courts.

Plaintiff is generally allowed to possess hard copies of materials that would otherwise be provided on CDs. Although obtaining hard copies may be more cumbersome and more expensive, those factors alone are insufficient to amount to a restriction on Plaintiff's access to the courts. *Cf. Tedder v. Odel*, 890 F.2d 210, 211–12 (9th Cir. 1989) (clarifying that, even when a party is indigent and qualifies for in forma pauperis status, other trial expenses, such as fees for witnesses, may be imposed); *see also Beck v. Symington*, 972 F. Supp. 532, 534 (D. Ariz. 1997) ("The touchstone of an inmate's right of access to the courts is that his access be 'adequate, effective, and meaningful.' This right has never been interpreted to mean that an inmate's access must also be free of charge." (internal citation omitted)).

As with the restriction on carbon paper discussed above, even if the CD restriction affected Plaintiff's right of access to the courts, it would be valid under the *Turner* test. The prison has legitimate interests in preventing the exposure of the prison computer system to viruses and in avoiding the substantial time it would require for employees to review the content of CDs prior to permitting inmate access. As previously mentioned, Plaintiff has an alternative to obtaining documents on CD because he is generally permitted to possess hard copies of documents. *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003) ("Alternatives . . . need not be ideal, however; they need only be available."). Allowing Plaintiff to have access to a CD would be problematic because, even though it may not exhaust significant resources to review the content of Plaintiff's CD, it would be

1   extremely difficult for the prison to accommodate the review of CDs

2   for all inmates, and the prison has an interest in applying its

3   policies uniformly. Finally, there are no clear alternatives available

4   to the policy of prohibiting CDs that do not come from authorized

5   vendors. Although it might make sense at some point in the future for

6   the prison to permit CDs from verifiable entities such as attorneys,

7   the Court, or law enforcement agencies, the Court appreciates the fact

8   that there are currently limits on the ability to verify the source of

9   CDs. Accordingly, the DOC's restriction on CDs is permissible, and

10  Defendants are entitled to judgment as a matter of law.

11          3.   Calendars

12          Plaintiff argues that the DOC restriction on calendars not from

13  an approved vendor or a religious organization violates his First

14  Amendment free speech rights. ECF No. 41 at 30. Defendants respond

15  that the calendar restriction ensures compliance with content, size,

16  and material restrictions, and thereby reduces the risk of contraband

17  entering the prison and avoids the significant expenditure of staff

18  time that would be required to review all calendars. ECF No. 56 at 8–

19  10; ECF No. 57 at 2–3.

20          This restriction does impinge on Plaintiff's First Amendment

21  right to receive mail, but the Court nevertheless finds that the

22  restriction is appropriate. See *Witherow v. Paff*, 52 F.3d 264, 265

23  (9th Cir. 1995) (explaining that inmates have a First Amendment right

24  to send and receive mail, but that the right can be limited based on

25  legitimate penological needs). Applying the *Turner* test, the Court

26  finds that DOC has a legitimate interest in ensuring that calendars

1  comply with content, size, and material restrictions to prevent

2  inmates from obtaining contraband and to promote penological

3  objectives by not allowing certain content and enforcing the prison's

4  property policy. DOC also has a legitimate interest in limiting the

5  amount of time expended by staff in reviewing incoming mail. The

6  calendar restriction is rationally related to these interests.

7      While the policy may not be the least restrictive means of

8  furthering CRCC's interests, a prison is not required to use the least

9  restrictive means possible. *Turner*, 539 U.S. at 136 ("*Turner* does not

10  impose a least-restrictive-alternative test . . . ."). Requiring

11  inmates to purchase calendars from an approved vendor ensures that all

12  calendars comply with the prison's guidelines and generally avoids the

13  need for staff to inspect the calendars. Allowing a limited exception

14  for religious calendars coming directly from a publishing company or

15  book vendor is also reasonable, given the free exercise rights of

16  inmates.[2] While the exception would seem to result in the need for

17  staff to review incoming religious calendars for compliance with

18  prison guidelines, the general policy would still effectively limit

19  the materials requiring review.

20      In addition, inmates have an alternative to receiving

21  nonreligious calendars through the mail in that they can purchase the

22  calendars from the approved vendor. While accommodating a single

23  inmate's request to receive a calendar through the mail may not be

24  _____

[2] It is a separate issue, which is not before the Court, whether the prison's policy of allowing only religious calendars from publishing companies and

25  book vendors could pose an issue under the Establishment Clause of the First Amendment. *See McCreary Cty., Ky. v. Am. Civil Liberties Union of*

26  *Ky.*, 545 U.S. 844, 860 (2005)(explaining that the First Amendment requires "governmental neutrality . . . between religion and nonreligion").

particularly burdensome for the prison — as it would not be extremely time-consuming to review one calendar and ensure compliance with prison regulations — CRCC has an interest in the uniform application of policy. Allowing inmates to receive calendars more generally would consume staff resources and increase the likelihood that contraband would be introduced into the facility. Finally, although there are alternatives to reduce the likelihood of contraband — such as allowing calendars more generally from publishers or book vendors or allowing postcard calendars that obviously comply with prison regulations — there are no obvious alternatives that would also advance the interest of reducing the need for staff to review incoming calendars. Accordingly, the Court finds that the calendar restriction is permissible, despite any infringement of Plaintiff's First Amendment right to free speech and to receive mail. Defendants are therefore entitled to judgment as a matter of law on this claim.

**C.   Grievances**

Plaintiff's claims against Defendant Fluaitt relate to her handling of the grievance system. Plaintiff argues that the grievance procedure is inadequate, that Fluaitt's performance was deficient, and that Fluaitt retaliated against Plaintiff in relation to his filing of grievances. As to these claims, the Court again finds that there are no issues of material fact, making these claims appropriate for resolution on summary judgment.

1.   <u>Procedures</u>

First, to the extent that Plaintiff criticizes DOC's grievance procedures, arguments of an entitlement to specific grievance

procedures are largely precluded by Ninth Circuit case law holding that "[t]here is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."). "Because inmates . . . do not have a substantive right to prison grievance procedures, the failure of prison officials to comply with those procedures is not actionable under § 1983." *Butler v. Bowen*, 58 F. App'x 712 (9th Cir. 2003).

A prisoner's right of meaningful access to the courts does, however, extend to an established prison grievance procedure. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). The Ninth Circuit has held that the right to file prison grievances is "[o]f fundamental import to prisoners." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Accordingly, to the extent Plaintiff argues that he was not permitted to use the grievance procedure, due to Defendant Fluaitt's conduct or otherwise, that claim is actionable.

A Ninth Circuit panel has noted, however, that an inmate's grievance rights may be limited "in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Schroeder v. Smythe*, 29 F.3d 634, at *1 (9th Cir. 1994) (table) (quoting *Walker v. Sumner,* 917 F.2d 382, 385 (9th Cir. 1990)). In that case, the Ninth Circuit held that a restriction on filing grievances was permissible and did not violate an inmate's First Amendment rights when "[i]t simply affected the number of grievances [the inmate] could file each day without censoring the content of his

one daily grievance" because the restriction prevented a "drain on prison resources" and "maintain[ed] discipline in the prison by enforcing prison rules." *Schroeder*, 29 F.3d 634, at *2; *see also Clark v. Beard*, No. 11-CV-03520-YGR (PR), 2015 WL 4452470, at *4 (N.D. Cal. July 20, 2015) (finding that an inmate has "no First Amendment right to file appeals" of grievance decisions and that the inmate in that case had failed to demonstrate "a constitutional right to file an unlimited number of non-emergency appeals").

Here, Plaintiff argues that his rights were violated when Defendant Fluaitt chastised Plaintiff for filing too many grievances on the same topic and threatened an infraction if Plaintiff continued to file multiple grievances on the same topic. Plaintiff notes that the practices engaged in by CRCC grievance officials also include: "grievances not being returned, or untimely returned then summarily dismissed as not meeting five day deadline window for appeal; changing Log ID numbers midstream; not filing grievances or losing them when they are critical of staff; summarily dismissing grievances at the second level to avoid headquarters review, especially when critical of practices and procedures to reduce litigation for lack of exhaustion." ECF No. 41 at 37.

As to Plaintiff's primary claim, Plaintiff's rights were not violated because he was chastised and threated with an infraction for filing numerous grievances on the same topic. Plaintiff claims that each grievance raised a distinct issue — which appears to be true — but the grievances at issue all addressed the same topic of access to the law library. It was not unreasonable for CRCC to limit the number

of grievances Plaintiff could file on that topic within a short period of time, given the need to conserve prison resources noted by Defendants. ECF No. 56 at 8; *see also Schroeder*, 29 F.3d 634.

As to the list of other practices included in Plaintiff's Cross-Motion for Summary Judgment, the return of grievances, the Log ID numbers, and the dismissal of grievances are the type of specific grievance procedures to which inmates do not have a right. The alleged practice of not filing grievances or losing grievances could interfere with an inmate's right of access to the courts, which applies to access to the grievance system. In this case, however, there is no evidence that Defendants have failed to file or have lost Plaintiff's grievances — many of his filed and processed grievances are included in the record — and, more importantly, Plaintiff has failed to allege any injury suffered due to an inability to access the grievance system. *See Al-Hizbullahi v. Nimrod*, 122 F. App'x 349, 350–51 (9th Cir. 2005) (citing *Lewis v. Casey*, 518 U.S. 343, 353–55 (1996)). Defendants are entitled to judgment as a matter of law on these issues.

2.  Retaliation

Second, to the extent Plaintiff claims that Defendant Fluaitt retaliated against Plaintiff for his valid use of the grievance system, the Court finds that there is no question of material fact and that Defendant Fluaitt is entitled to judgment as a matter of law. Plaintiff and Defendants agree that Ms. Fluaitt sent Plaintiff a letter advising Plaintiff that if he continued to submit multiple grievances on the same topic, he would be subject to sanction. The

Court finds that, as a matter of law, this action does not constitute retaliation.

"[P]urely retaliatory actions" taken against an inmate due to the inmate's valid use of the grievance process constitute a violation of an inmate's constitutional rights. *Rhodes*, 408 F.3d at 567; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *see also Knight v. Nimrod*, 14 F. App'x 921, 922 (9th Cir. 2001) (unpublished) ("[D]isciplinary rules that discourage a prisoner from filing a grievance violate the right of access to the courts." (citing *Bradley,* 64 F.3d at 1279)). An inmate can bring an action for such conduct if the inmate can demonstrate "that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *See Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994); *see also Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to support a retaliation claim).

The Ninth Circuit applies a five-element test for First Amendment retaliation: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68 (internal footnote omitted). In *Garcia v. Maddock*, the Ninth Circuit held that "the prison's attempts to restrict excessive

1  nonemergency grievances support legitimate penological goals." 64 F.

2  App'x 10, 12–13 (9th Cir. 2003)

3      Plaintiff's claim fails under this test for multiple reasons.

4  Defendant Fluaitt did not clearly take an "adverse action" against

5  Plaintiff because Ms. Fluaitt only advised Plaintiff that he would be

6  subject to sanction in the future. In addition, and most importantly,

7  Plaintiff's conduct was not "protected conduct" because, as discussed

8  above, Plaintiff did not have a constitutional right to file multiple

9  grievances on the same topic, even if the grievances differed slightly

10  in their details. It is also not clear that Plaintiff's First

11  Amendment rights were chilled or that he has suffered some other

12  injury because he has continued to file numerous grievances on a

13  variety of topics. The Court finds that "a person of ordinary

14  firmness" would not have been deterred from filing valid grievances

15  based on Ms. Fluaitt's letter. *See Rhodes*, 408 F.3d at 568–69 ("[T]he

16  proper First Amendment inquiry asks whether an official's acts would

17  chill or silence a person of ordinary firmness from future First

18  Amendment activities." (internal quotation marks and emphasis

19  omitted)). Finally, as explained above, the DOC Defendants had a

20  legitimate correctional goal of limiting the number of grievances and

21  conserving prison resources. Overall, Plaintiff has failed to present

22  evidence of a retaliatory act by Defendant Fluaitt. *See Schroeder*, 29

23  F.3d 634, at *2 ("[The Plaintiff] has offered no evidence, other than

24  bare allegations, to raise a genuine issue of material fact regarding

25  his retaliation claim." (internal quotation marks omitted)).

26

1  Defendants are therefore entitled to judgment as a matter of law on

2  this issue.

3  **D.    Law Library**

4       Plaintiff raises claims under the First, Eighth, and Fourteenth

5  Amendments based on issues related to the law library at CRCC.

6       Inmates possess a "fundamental constitutional right of access to

7  the courts," and prison authorities must either provide adequate law

8  libraries or adequate assistance from legally trained individuals in

9  order to satisfy this right. *Bounds v. Smith*, 430 U.S. 817, 828

10 (1977). There is, however, no "abstract, freestanding right to a law

11 library or legal assistance." *Lewis*, 518 U.S. at 352. Instead, the

12 right to an adequate law library or legal assistance exists only when

13 necessary to promote an inmate's right of access to the courts. *Id*. An

14 inmate must therefore demonstrate that any "alleged shortcomings in

15 the prison library or legal assistance program have hindered, or are

16 presently hindering, his efforts to pursue a nonfrivolous legal

17 claim." *Id*. An inmate's right of access to the courts is also limited

18 to certain types of claims: "The 'tools' that *Lewis* and *Bounds*

19 'require[ ] to be provided are those that the inmates need in order to

20 attack their sentences, directly or collaterally, and in order to

21 challenge the conditions of their confinement.'" *Hebbe v. Pliler*, 627

22 F.3d 338, 343 (9th Cir. 2010) (internal citation omitted).

23       Plaintiff alleges that he was given insufficient access to the

24 law library, such that he was unable to meet a filing deadline in a

25 case. Plaintiff also claims that the law library is deficient because

26 it lacks certain resources. As a result of these issues, Plaintiff

argues that he has been denied his constitutional right of access to the courts under the First and Fourteenth Amendments. Plaintiff also argues that his Eighth Amendment rights have been violated because Defendants were deliberately indifferent to injuries caused by problems with the law library. Finally, Plaintiff claims that Defendant Gonzalez retaliated against him by removing books from the law library. The Court addresses these claims in turn.

### 1. Defendant Sherbo

The Court first addresses Plaintiff's claims against Defendant Sherbo. Plaintiff argues that Defendant Sherbo, as an employee of the Washington State Library and project manager under the contract between DOC and the State Library, violated his right of access to the courts by failing to adequately staff the law library. ECF No. 41 at 11. Defendants argue that Ms. Sherbo has no duty to provide for Plaintiff's access to the courts because she is not a Department of Corrections employee. ECF No. 26 at 17–18. The Court finds that Plaintiff has failed to demonstrate a violation by Defendant Sherbo of any duty owed to Plaintiff.

In order to bring a claim under § 1983, a plaintiff must demonstrate that he was deprived of his rights due to the conduct of a state actor. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."). A supervisor may be liable under § 1983

only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.* (quoting *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)) (internal quotation marks omitted)).

In the context of law libraries, "the fundamental constitutional right of access to the courts requires *prison authorities* to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Bounds*, 430 U.S. at 828 (emphasis added). This duty applies to "prison authorities," and the Court finds no support for Plaintiff's argument that Defendant Sherbo, as a non-prison authority, can be liable for a violation of an inmate's right of access to the courts.

First, there is no indication that Defendant Sherbo owed a duty to Plaintiff regarding access to the courts. In addition, there is no evidence that Defendant Sherbo took any affirmative action under color of state law or failed to take a required action that resulted in a deprivation of Plaintiff's rights. Defendant Sherbo, working for the Washington State Library, did have a contractual duty to provide law library services to CRCC, but it was still ultimately the duty of DOC officials to ensure that Plaintiff's right of access to the courts was

not impaired. *Cf. Gilmore v. Lynch*, 319 F. Supp. 105, 112 (N.D. Cal. 1970), *aff'd sub nom. Younger v. Gilmore*, 404 U.S. 15 (1971) ("Assuming that the Department provides adequately for inmate legal needs, the back-stopping function now performed by the State Library will become superfluous."). Plaintiff is not otherwise entitled to enforce Defendant Sherbo's contractual obligations. Accordingly, Plaintiff's § 1983 claim against Ms. Sherbo fails.[3]

     2.   <u>Access to Law Library</u>

     Plaintiff claims that he was not allowed access to the library when he had a pending deadline in state court, and that the case was dismissed as a result of his failure to comply with that deadline. ECF No. 41 at 7–9; ECF No. 42 Ex. 5. Defendants respond that Plaintiff did not have a substantive deadline, but only a deadline to pay a filing fee, and that access was not required for the type of claims involved. ECF No. 56 at 2–3. Plaintiff also argues that, subsequently, the law library was often closed and he was denied access due to the frequent closures. DOC Defendants respond that closures were due to a contract with the Washington State Library and staffing difficulties that, once discovered, were remedied by making changes to that contractual relationship and allowing staffing vacancies to be satisfied by DOC employees. The Court finds that these claims present no genuine disputes of material fact and are appropriate for resolution on summary judgment.

---

[3] Regardless of the Court's findings as to Defendant Sherbo, the Court finds that no violation of Defendant's right of access to the courts occurred, as explained below. Accordingly, even if the Court had found that Defendant Sherbo was a proper defendant for Plaintiff's § 1983 claim, that claim would fail.

In order to establish a violation of the right of access to the courts, an inmate must demonstrate that he was attempting to bring a qualifying claim — related to his crime of conviction, conditions of confinement, or civil rights — and that the prison's failure to provide an adequate law library or legally trained assistance hindered the inmate's ability to bring such a claim. *Hebbe*, 627 F.3d at 342–43. "[T]he Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner and place in which library facilities are used." *Lindquist,* 776 F.2d at 858. Nevertheless, "[t]he existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library." *Id.* at 854. Thus, the following efforts can all constitute unreasonable restrictions on adequate access to a law library: (1) arbitrarily denying or ignoring requests for library access despite space availability, (2) permitting prisoners insufficient time in the library, (3) providing inadequate notice of library turnouts, (4) scheduling turnouts to conflict with other activities, or (5) arbitrarily removing inmates from the library. *Gluth v. Kangas*, 951 F.2d 1504, 1508 (9th Cir. 1991).

The Court first addresses Plaintiff's claim that Defendants interfered with his ability to meet a case deadline, which resulted in the case being dismissed. As an initial matter, the Court finds that Plaintiff's relevant case, which involved a challenge to child support payment calculations ECF Nos. 33-1 & 33-2, is not the type of case for

1   which access to the courts is guaranteed for inmates. Accordingly, the

2   Court finds that Plaintiff is not entitled to relief on this claim.

3        The Court notes, however, that CRCC should be cautious in

4   determining what types of case deadlines merit priority access for

5   inmates. Though Plaintiff's deadline was facially a deadline to pay a

6   filing fee, Plaintiff claims that he needed library time in order to

7   effectively contest the requirement to pay the fee. Seemingly

8   procedural deadlines, like the deadline to pay a fee, may thus require

9   research. When cases raise claims for which inmates have rights of

10   access to the courts, priority access to the law library should not be

11   denied simply because a deadline appears to be procedural if the

12   inmate can explain why research is necessary and prison administrators

13   find that such an explanation is valid and made in good faith.[4]

14        Regardless, in this instance, Plaintiff has not demonstrated

15   that he suffered any injury as a result of not being granted access to

16   the law library. Defendants submitted the docket in Plaintiff's

17   relevant case, ECF No. 33-1 at 14, and it appears that Plaintiff filed

18   his order of indigency with the Washington Court of Appeals in order

19   to demonstrate an inability to pay the filing fee. Plaintiff does not

20

21

---

22  [4] Defendants also indicate that when there is a question as to whether an inmate requires access to the library for a court deadline, prison officials sometimes contact the attorney general's office. *See* ECF No. 31 at 3; ECF No. 42 Ex. 12 at 1–2. Although attorneys are bound by ethical requirements and must not make misrepresentations that would be adverse to pro se opposing parties, the state assistant attorney generals may often have a different view of the case than does the opposing party inmate, and a state attorney's opinion as to whether research is required may not adequately reflect the inmate's case strategy and view of the issues. Prison officials should generally defer to an inmate's good faith representation that research is necessary if the inmate provides a sufficient explanation.

1   articulate what — if anything — he could have submitted to avoid the

2   dismissal of his case.

3        Given the fact that Plaintiff's child support case was not the

4   type of case in which inmate access to the courts is guaranteed, and

5   because the uncontested evidence does not reveal any injury resulting

6   from Plaintiff's inability to access the law library, rather than as a

7   result of failing to pay a required fee in compliance with court

8   order, the Court finds that Plaintiff has failed to demonstrate

9   entitlement to relief on this claim.

10       Plaintiff also argues that he has been denied access to the

11  courts more generally due to numerous closures of the law library. In

12  this case, the Court finds that, although the law library at CRCC was

13  closed and unavailable to inmates for significant periods of time,

14  Plaintiff has failed to demonstrate any injury as a result of the

15  closures. As discussed above, there is no freestanding right to a law

16  library apart from a need to access the library in order to exercise

17  one's right to access the courts. *See Lewis*, 518 U.S. at 351.

18  Plaintiff has not demonstrated that the restrictions on access due to

19  the numerous closures of the library hindered his ability to access

20  the courts.

21       In addition, there is significant evidence in the record that

22  Defendants were making efforts to accommodate inmates and ensure that

23  the law library closures did not affect inmates' abilities to access

24  the courts. *See, e.g.*, ECF No. 42 Ex. 13, Ex. 32, Ex. 33. While

25  staffing issues for the CRCC law library did arise — primarily due to

26  the illness and death of one staff member and limitations in the

1   contract between DOC and Washington State Library — Defendants took

2   steps to resolve the issues. *See, e.g.*, ECF No. 28-4, 28-6 at 148; ECF

3   No. 42 at Exs. 13, 33, 76. There is no evidence that the library

4   closures actually denied Plaintiff access to the courts.

5       3.   Adequacy of Law Library

6       Plaintiff also alleges that the law library at CRCC is

7   inadequate because it does not include certain reference materials,

8   including the Washington Practice Series. ECF No. 41 at 15–21.

9   Defendants argue that DOC provided "adequate research tools through

10  case law, statute and other references materials." ECF No. 26 at 11.

11      First, the Court finds that the condition of the CRCC library

12  does not implicate a liberty or property interest under the Fourteenth

13  Amendment Due Process Clause. The holdings regarding liberty interests

14  in the cases cited by Plaintiff, *Olim v. Wakinekona*, 461 U.S. 238

15  (1983), and *Hewitt v. Helms*, 459 U.S. 460 (1983), were significantly

16  constrained by *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the

17  Supreme Court held that liberty interests protected by the Due Process

18  Clause in the prison context "will generally be limited to freedom

19  from restraint which . . . imposes atypical and significant hardship

20  on the inmate in relation to the ordinary incidents of prison life."

21  *Sandin*, 515 U.S. at 484. Under the rule announced in *Sandin*, the DOC

22  Law Library Resource List does not create a liberty interest in access

23  to the resources on that list because the resources do not relate to

24  an inmate's freedom from restraint, and deprivation of the resources

25  does not impose atypical or significant hardship on inmates. *See*

26  *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).

1    In addition, the DOC has not created a property interest in the

2    Offender Betterment Fund. Prison policy clearly establishes that

3    monies from the fund "will be used solely for offender betterment

4    activities that enhance the security and orderly operation of a

5    facility by reducing idleness and encouraging positive development of

6    family and community ties." ECF No. 42 Ex. 15 at 215. In addition,

7    "[t]he authority to spend from the [Offender Betterment Fund] is

8    vested with the Secretary." ECF No. 42 Ex. 15 at 215. Plaintiff

9    therefore does not have a protected property interest in the monies in

10   the Offender Betterment Fund or the items purchased through the fund.

11   *See St. Hilaire v. Lewis*, 26 F.3d 132 (9th Cir. 1994) (table).

12   Accordingly, Defendants' decision to remove the Washington Practice

13   Series from the CRCC law library — and other use of Offender

14   Betterment Fund monies related to the law library — did not violate

15   Plaintiff's procedural due process rights under the Due Process Clause

16   of the Fourteenth Amendment.

17       The Court now turns to Plaintiff's claim that Defendants'

18   failure to provide certain reference materials affected Plaintiff's

19   right of access to the courts. The resources that must be provided in

20   a prison law library in order to avoid impairing the right of access

21   to the courts are "those that the inmates need in order to attack

22   their sentences, directly or collaterally, and in order to challenge

23   the conditions of their confinement." *Lewis*, 518 U.S. at 355. A prison

24   "need not provide its inmates with a library that results in the best

25   possible access to the courts." *Lindquist*, 776 F.2d at 856; *Phillips*,

26   588 F.3d at 656 ("[W]hat *Bounds* required was that the resources meet

minimum constitutional standards sufficient to provide meaningful, though perhaps not 'ideal,' access to the courts.").

As explained above, there is no independent constitutional right to a prison law library. Instead, law libraries or legal assistance are "only the means for ensuring 'a reasonably adequate opportunity to present claimed violation of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (citations omitted). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. Instead, "a library that meets minimum constitutional standards" is all that is required. *Lindquist,* 776 F.2d at 856.

In *Lindquist,* the Ninth Circuit held that a prison library need not contain the Pacific Reporter 2d, Shepard's Citations, a number of other reference books, and early editions of the Federal Supplement. *Id.* at 856. Other circuits have addressed the adequacy of prison law library resources on a case-by-case basis and found that law libraries are adequate when they contain a reasonable combination of case reporters, statutes, and secondary sources. *See Petrick v. Maynard*, 11 F.3d 991, 994 n.3 (10th Cir. 1993)(compiling cases). Although the American Association of Law Libraries collection list or other lists of recommended resources may be relevant to determining whether a law library's resources are adequate, *see Bounds*, 430 U.S. at 819 n.4,

compliance with any particular list, including the DOC Law Library Resource List, is not required.

In this case, Plaintiff fails to demonstrate that he suffered an actual injury based on the condition of the CRCC law library. While Plaintiff notes that he was denied access to the courts based on the inadequacy of the resources in the law library, he does not point to a qualifying case that he was unable to bring or that was dismissed based on the lack of resources in the library. By itself, this inability to demonstrate an actual injury regarding access to the courts would defeat Plaintiff's claim.

It is also not clear that the law library violated the terms of the DOC Law Library Resource List, as it appears that Defendants attempted, in good faith, to provide the resources on that list. *See* ECF Nos. 28-9 at 188 (LexisNexis contract bid demonstrating that DOC requested that any contractor provide the Washington Practice Series and that LexisNexis indicated that "Washington Criminal Practice in Courts of Limited Jurisdiction" was a comparable resource), 28-11 (August 15, 2016 order form reflecting DOC's purchase of the Washington Practice Series). DOC policy itself appears to only require that the law library include "relevant and up-to-date constitutional, statutory, and case law materials, applicable court rules, and practice treatises." ECF No. 41 Ex. 16 at 233.

Regardless, the Court finds that the law library at CRCC complied with the access to court requirements as announced in *Bounds*. "Unless there is a breach of constitutional rights, . . . § 1983 does not provide redress in federal court for violations of state law."

*Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (quoting *Schlette v. Burdick*, 633 F.2d 920, 922 n.3 (9th Cir. 1980)). Here, even if Defendants violated DOC policy by failing to provide the Washington Practice Series or other resources to inmates, there was no breach of Plaintiff's constitutional rights. The CRCC library appears to have, at all times, provided adequate materials to enable Plaintiff to access the courts. Even if the LexisNexis system was difficult for Plaintiff to use or not as helpful as the Washington Practice Series, it provided access to numerous cases, statutes, and secondary sources sufficient to satisfy the *Bounds* requirement. ECF No. 28-10 Ex. J.

Although Plaintiff is understandably frustrated by the changes to the law library and the removal of resources that he found helpful, he has failed to present facts demonstrating a violation actionable under § 1983. Accordingly, the Court finds that there is no dispute of material fact, and that Defendants are entitled to judgment in their favor on this claim as a matter of law.

4.    <u>Deliberate Indifference</u>

Plaintiff also argues that Defendants were deliberately indifferent regarding the deficiencies of the law library, in violation of the Eighth Amendment. Defendants argue that this claim should be dismissed as frivolous.

The Eighth Amendment of the U.S. Constitution prohibits "cruel and unusual punishments." Two conditions must be satisfied to prove an Eighth Amendment claim against prison officials. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, "a prison official's act or omission

must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This standard is satisfied when the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin*, 515 U.S. 472; *Farmer*, 511 U.S. at 833. Second, a prison official must have a sufficiently culpable state of mind, which is defined in prison-conditions cases as a state of mind of "'deliberate indifference' to inmate health or safety." *Id.* The Eighth Amendment "requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable." *Rhodes*, 452 U.S. at 347, 349.

Here, Plaintiff argues that Defendants were deliberately indifferent by failing to provide adequate library materials. While the adequacy of a prison law library raises other constitutional concerns — as discussed above — a prison is not required to provide legal resources under the Eighth Amendment. Such resources do not constitute "life's necessities." In addition, even if Defendants were deliberately indifferent to the situation — and the Court finds that Defendants were not indifferent and made efforts to remedy the situation — any indifference would not be in relation "to inmate health or safety," as required for a violation of the Eighth Amendment. Thus, Plaintiff's Eighth Amendment claim regarding the sufficiency of the CRCC law library fails. The Court therefore grants summary judgment on this claim in favor of Defendants.

/

5.    <u>Retaliation Claims</u>

Plaintiff also raises a retaliation claim against Defendant Gonzalez based on the removal of the Washington Practice Series from the CRCC law library. Plaintiff argues that the books were removed as a result of Plaintiff exercising his right to file grievances and grieving the out-of-date quality of the books. ECF No. 41 at 30. Defendants respond that the removal of the books was not ordered to punish or otherwise affect Plaintiff, but simply because Defendant Gonzalez had ordered the books removed years before when the DOC switched to electronic legal resources. ECF No. 26 at 15–16; *see also* ECF No. 28-7.

As explained above, to prove a claim of First Amendment retaliation, a plaintiff must prove that a state actor took an adverse action against an inmate based on the inmate's protected conduct, and that the adverse action did not advance a legitimate correctional goal. *Brodheim*, 584 F.3d at 1269. The Court finds that Plaintiff has failed to present sufficient facts to support his claim of retaliation by Defendant Gonzalez.

Defendant Gonzalez did not take an adverse action against Plaintiff because of Plaintiff's filing of grievances. Defendant Gonzalez had previously ordered the books removed, ECF No. 28-7, so their removal was required, regardless of Plaintiff's grievances. Further, because Defendant did not have a right to the Washington Practice Series books, removal of these books was not clearly "adverse" to Plaintiff in any meaningful way. The removal also advanced a legitimate correctional goal. As cited by Plaintiff, a

panel of the Ninth Circuit has indicated that a prison may be required to update the legal reference materials that it provides to inmates, *see Mead v. Reed*, 946 F.2d 898, *1 (9th Cir. 1991) (table) (affirming a district court order that all materials at a prison law library "be kept current in order to meet constitutional standards"). Further, the Court finds that resource materials being out-of-date would be relevant to a court's finding as to whether a prison law library was adequate and DOC policy requires that resources be kept up-to-date, ECF No. 41 Ex. 16 at 233. Defendant Gonzalez therefore had an interest in removing the books, rather than allowing out-of-date resources to be present in the law library after the transition to electronic legal resources.

While Plaintiff suggests that Defendant Gonzalez did not order removal of the books until Plaintiff had filed his complaint, ECF No. 41 at 30, and Defendant Gonzalez presents evidence that he had previously ordered removal of the books, ECF No. 28-7, the Court finds that these discrepancies do not create a material dispute of fact. Plaintiff's position is contradicted by documentary evidence, the authenticity of which has not been disputed. In addition, as explained above, Plaintiff's claim fails regardless of whether Defendant Gonzalez ordered the removal of the books as a result of Plaintiff's claim because the action was not adverse to Plaintiff and Defendant Gonzalez had a legitimate penological interest in ordering the books removed. Defendants are entitled to judgment as a matter of law.

//

/

### IV.   CONCLUSION

In sum, the Court finds that there are no genuine disputes as to any issue of material fact in this case and that Defendants are entitled to judgment as a matter of law on all claims raised by Plaintiff. Defendants' Motion for Summary judgment is therefore granted. Plaintiff's Cross-Motion for Summary Judgment is denied to the extent Plaintiff requests that summary judgment be granted in his favor and granted to the extent Plaintiff requests dismissal of his Sixth Amendment claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment, **ECF No. 26,** is **GRANTED.**

2.    Plaintiff Donald Hunt's Cross-Motion for Summary Judgment, **ECF No. 41,** is **DENIED IN PART AND GRANTED IN PART.** Plaintiff's request that summary judgment be granted in his favor is denied. To the extent the Court construes the motion as a Motion to Dismiss Sixth Amendment Claims under Federal Rule of Civil Procedure 41, the Motion is granted.

3.    Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

4.    This case shall be **CLOSED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order, enter judgment in favor of Defendants and provide copies to Plaintiff and all counsel.

**DATED** this  20th  day of July 2017.

                          s/Edward F. Shea
                     EDWARD F. SHEA
              Senior United States District Judge